UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVERY CHRISTOPHER CROSS,

                          Petitioner,                        Case No. 1:14-cv-530

v.                                                 Honorable Gordon J. Quist

JOE BARRETT,

                          Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

        Petitioner Ivery Christopher Cross, III pleaded guilty in the Berrien County Circuit Court to three counts of second-degree criminal sexual conduct (CSC II), MICH. COMP. LAWS

§ 750.520c(1)(c), and misconduct in office, MICH. COMP. LAWS § 750.505.  On May 27, 2011, Petitioner was sentenced to three concurrent prison terms of five to fifteen years on the CSC II convictions, and one term of twenty-three months to five years on the misconduct-in-office conviction.

Petitioner, who was an officer with the Niles Police Department, initially was charged in a five-count felony information.  In addition to the four counts to which he pleaded guilty, Petitioner also was charged with one count of first-degree criminal sexual conduct (CSC I).  According to the indictment, on March 17, 2011, while acting in his law-enforcement capacity, Petitioner committed a series of criminal sexual acts with an inmate at the Niles City Police Complex.

On April 19, 2011, Petitioner waived his preliminary examination and pleaded guilty to the CSC II charges and the misconduct-of-office charge, in exchange for the dismissal of the CSC I charge and an agreement to be sentenced within the guideline range on the minimum sentence of 36 to 71 months.

On November 22, 2011, Petitioner filed a motion to withdraw the plea, contending that his attorney provided ineffective assistance of counsel, misleading him into accepting the plea agreement.  Petitioner specifically contended that counsel misrepresented the sentence he would face if convicted of CSC I, misrepresented Petitioner's eligibility for boot camp or alternative placement, misrepresented Petitioner's eligibility for good-time credits, and failed to disclose to Petitioner that the guideline sentence would be his minimum sentence, not his maximum sentence.  Petitioner also argued that the plea was illusory, depriving him of his Fifth Amendment right to due process.  On February 16, 2012, the trial court held a lengthy evidentiary hearing on the issues.  (*See* Tr. of Mot. to Withdraw Plea Hr'g (Hr'g Tr.), docket #2-5, Page ID##67-262.)  In a thorough opinion and order

-2-

issued June 18, 2012, the trial court denied the motion.  (Cir. Ct. Op. & Ord. Denying Mot. to Withdraw Plea (Cir. Ct. Op.), Docket #2-8, Page ID##298-314.)

Petitioner filed an application for leave to appeal to the Michigan Court of Appeals, raising the same two grounds presented in the motion to withdraw the plea.  (*See* Appl. for Leave to App., docket #9, Page ID#551.)  In a standard order issued January 2, 2013, the court of appeals denied leave to appeal for lack of merit in the grounds presented.  (Mich. Ct. App. Ord. (MCOA Ord.), docket #8.)  Petitioner sought leave to appeal the same grounds to the Michigan Supreme Court.  The supreme court denied leave to appeal on May 28, 2013.

Petitioner filed the instant habeas application on May 13, 2014.  He raises the same two federal constitutional grounds presented in the state courts:

I.      Trial Counsel was constitutionally ineffective contrary to the Sixth Amendment of the United States Constitution requiring reversal where Trial Counsel gave improper advice to Petitioner during the plea negotiation process and otherwise coerced Defendant into taking the plea offer.

II.     Petitioner's convictions should be reversed where the plea agreement was illusory denying Petitioner his 5th Amendment right to due process.

Because Petitioner has filed copies of all relevant parts of the record, this Court has sufficient information to conduct a complete review of his claims on the merits.[1]

### Discussion

I.      Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

---

[1] Petitioner filed a motion seeking leave to file a brief in excess of the local court rules (docket #3).  The motion will be granted, and the Court has considered Petitioner's full brief and all attachments in reaching its decision.

to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). The Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). "In *Greene*, the Court clarified that state courts must follow clearly established law as it existed 'at the time of the state-court adjudication on the merits.'" *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014). "That is, under 28 U.S.C. § 2254(d), 'clearly established Federal law' is the law at the time the original decision was made, not as [the Sixth Circuit had previously held], the law 'before the conviction became final.'" *Miller*, 642 F.3d at 644 (quoting *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–406). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle

-4-

from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, the Court finds that Petitioner is not entitled to relief.

II.   Merits

Petitioner raises two constitutional challenges to the validity of his guilty plea. First, he contends that his plea was not knowingly and voluntarily entered because his decision was based on the constitutionally inadequate and ineffective assistance of counsel. Second, he asserts that his plea agreement violated the Fifth Amendment because the benefits of the agreement were illusory.

A defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or .

-6-

. . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

### A.    Ineffective Assistance of Counsel

Petitioner argues that his trial attorney rendered constitutionally ineffective assistance of counsel by giving improper advice to Petitioner during the plea negotiation process and otherwise coercing Petitioner into taking the plea. Petitioner and his family testified that he did not want to take the plea deal, but he was pushed to do so by counsel through a variety of representations. They variously testified that counsel inaccurately represented that Petitioner was facing a minimum sentence of 25 years or a maximum of life if he was convicted of CSC I, rather than the likely

minimum of between 135 and 225 months.  He also alleges that counsel did not advise him that there existed no serious risk of his ultimate conviction of CSC I, in light of the complainant's varying statements on penetration.  Petitioner next contends that counsel did not advise him that the sentencing range stipulated in the plea agreement for the CSC II convictions was the same as that to which he was legally entitled, even without an agreement.  In addition, he asserts that counsel did not make it clear to him that his guideline sentence was only a minimum sentence and that he would not necessarily be released until he had served the maximum term of 15 years.  Further, Petitioner contends that he was told that he was potentially eligible for boot camp or alternative placement, despite the fact that he was not eligible for that placement.  Finally, Petitioner claims that his attorney told him that he would be entitled to earn good-time credit in prison, thereby reducing the amount of prison time he would ultimately complete.  Petitioner contends that, but for these misrepresentations, he would not have pleaded guilty.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they

existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

In response to Petitioner's motion to withdraw the plea, the trial court set an evidentiary hearing,[2] at which he heard three and one-half hours of testimony from five witnesses: Petitioner's father, mother, and sister; Petitioner himself; and Petitioner's trial-level attorney. (*See*

---

[2] The evidentiary hearing conducted in this case is frequently referred to as a "*Ginther*" hearing by the trial court. In *People v. Ginther*, 212 N.W.2d 922 (1973), the Michigan established the right for a defendant challenging the effectiveness of counsel based on contested facts to have an evidentiary hearing. The evidentiary hearing in issue, however, was broader than a typical *Ginther* hearing, as it addressed both the effectiveness of trial counsel and the illusory nature of Petitioner's plea agreement.

Hr'g Tr. at 1-207, Page ID##67-272.)  The Court also considered the briefs of counsel on the motion to withdraw and the transcripts of the plea and sentencing hearings, as described in the fact section of the court's opinion:

> At the plea proceeding, while under oath, defendant stated:
>
> - He earned an associates degree in college.
> - He could read and write English.
> - He was not under the influence of alcohol or medication.
> - He had met with his lawyer, Andrew Burch[], many times in private.
> - He was satisfied with his lawyer's work.
>
> At that time Judge Gary Bruce described to defendant the four charges to which defendant was tendering his plea.  The court explained that the maximum penalty for CSC-2nd was fifteen years in prison while misconduct in office carried a five-year maximum.  Defendant verified that he had been advised of his rights and that no one had used any force, threats or tricks to get him to plead.  The assistant prosecutor stated the plea agreement, including an agreement that "the guideline range on the minimum for this case is 36-71 months[.]"  Defendant stated that he understood the agreement and that no one had promised him anything else.
>
> This exchange then took place between Judge Bruce and the defendant:
>
> > "THE COURT:  You understand that if I accept your plea, you can't come back in later and tell me or another Judge that you pled guilty because of some force, fraud, tricks or promises that you didn't tell me about today.
> >
> > THE DEFENDANT:  Yes, your Honor."
>
> Defendant then proceeded to give a factual basis for his guilty pleas.  He admitted that on March 17, 2011, while he was in uniform on duty with the alleged victim in custody, he touched the alleged victim's penis on two separate occasions and buttocks once, all for sexual gratification.  The court accepted the guilty pleas.
>
> Judge Scott Schofield[] presided over the May 27 sentencing, at which the Department of Corrections (DOC) presented a sentencing information report (SIR) scoring the guidelines at C-V, 51-85 months.  Mr. Burch objected to the scoring of OV 12[] for a contemporaneous felony[], saying that "the understanding was in the agreement was [sic] that criminal sexual conduct in the first degree probably did not occur." (Sentencing transcript, p. 5)  The prosecutor agreed "based on the statements of the victim, in speaking with him[.]"  (ST, p. 5)  The prosecutor made no challenges to the scoring.  Using the stipulated CSC- 2nd guideline range of 36-71 months, the court sentenced defendant to 60-180 months on each of those three

counts and 23-60 months on the misconduct in office count. All were to be served concurrently.

The court heard the motion on February 16, 2012, and at the close of the hearing agreed to allow counsel time to file supplemental briefs, the last of which was filed on April 23. The court has considered the hearing testimony and the briefs.

(Cir. Ct. Op. at 3-4, Page ID##300-31.)

In analyzing Petitioner's claim of ineffective assistance of counsel, the trial court properly recognized the limitations on Petitioner's right to challenge his plea. (*Id.* at 6-7, Page ID##303-04.) The court also carefully and accurately set forth the *Strickland* standard for analyzing the claim of ineffective assistance of counsel. (*Id.* at 5-6, Page ID##302-03.) Applying those standards, the court held:

Defendant offers no credible "fair and just reason" for the withdrawal of his guilty plea. He was given every opportunity by Judge Bruce to disclose any promises made to him beyond the plea agreement. Under oath he denied that there were any such promises. Under oath he made no mention of any promises of boot camp, good-time sentence reductions, local sex-offender programs, tether, or probation. Under oath he claimed that he had consulted privately with his lawyer and was satisfied with Mr. Burch's services. He cannot now be heard to claim that his trial counsel actually did make additional promises to him. *People v. Weir*, 111 Mich App 360, 361 (1981); *People v. Serr*, 73 Mich App 19, 28 (1976).

Even if defendant were permitted to make such claims after his sworn testimony at the plea proceeding denying them, this court would give them little credence. They are unworthy of belief. The court had the opportunity to observe defendant testify at the *Ginther* hearing, and the court finds he was not a credible witness. The court also had the opportunity to observe his trial counsel, Mr. Burch, and the court specifically finds that counsel did not promise defendant that he would get good-time sentence credits, receive a probationary sentence, serve incarceration time on tether, be eligible for a local sex-offender treatment program or go to boot camp. To use the words of Mr. Burch at the hearing, "You've got to be kidding me." (*Ginther* hearing transcript, p. 193)

Equally implausible is defendant's claim Mr. Burch failed to inform him that his sentence would include both a minimum and a maximum term of incarceration. Mr. Burch testified that he indeed did have a full discussion with defendant on this topic, and this court finds that he did.

Defendant asserts that he believed the guideline range referred to his maximum sentence and was shocked to learn that he could serve up to fifteen years in prison. Again, this is not worthy of belief. In finding defendant's claim hard to believe, the court considered these factors:

- Defendant was no neophyte unaccustomed to the arcane terminology of the law; he was a police officer.

- He was college-educated and graduated from a police academy.

- He had recently been the arresting officer in a serious CSC case and participated in a conference with the victim about what sentence the offender might receive.

- The private investigator his family hired had previously been the head of the DOC's felony probation office in Berrien County. Defendant discussed the plea offer with him. He, of course, would have been very familiar with boot-camp eligibility requirements, good-time credits and the difference between a minimum and maximum sentence.

- At the plea proceeding Judge Bruce explained the CSC-2nd charges carried a maximum sentence of fifteen years.

- At the same proceeding the prosecutor stated that the parties agreed that "the guideline range on the minimum for this case is 36 to 71 months[."] Defendant stated that he understood the charge, the possible penalty and the plea agreement.

- The PSIR prepared by the DOC recommended a sentence of 54-180 months. Defendant read it and reviewed it with his lawyer before sentencing.

- At the sentencing – before the court imposed sentence – the court informed defendant that "for at least the first three counts the guidelines are 36 to 71 months for the minimum sentence." The court went on to inform defendant that "by law the maximum sentence must be 15 years for those three counts."

That an intelligent police officer could somehow walk away from those proceedings with the understanding that he could spend no more than 71 months in prison is preposterous. Defendant's far-fetched claim casts serious doubt on the credibility of the rest of his testimony.

-12-

The court also rejects defendant's contention that Mr. Burch's cross-examination testimony at the *Ginther* hearing demonstrates his ineffectiveness as a defense lawyer.  If one's professional competence is to be judged by one's ability to unexpectedly field and accurately answer questions while being cross-examined in an adversarial proceeding with television cameras[] rolling within feet of one's face, then the court suspects all of us are incompetent.  Of greater usefulness in assessing trial counsel's legal know-how are his years of experience as a criminal-defense lawyer handling felony-level cases.  Years alone do not guarantee competence, but Mr. Burch's ability for decades to attract as clients people – including defendant himself – who face the prospect of prison[8] is a better indication of his legal proficiency than what the prosecutor accurately calls a "pop quiz[."]  As the prosecutor and Mr. Burch point out, when a lawyer is faced with a serious question about which he or she is not 100% sure, the good lawyer "would look it up[."] (*Ginther*, p. 191)

The court is not disregarding the testimony of defendant's parents and sister at the *Ginther* hearing.  None of them lied; the court finds that they all testified sincerely and honestly.  But people can testify honestly but simply be wrong about what they think they remember.[9]  Things that happen after an event can drastically color one's memory of that event.  The stress of an event can also detract from the quality of one's memory of that event.  Sometimes we remember what is in our best interest to remember.

Also casting doubt on the accuracy of the Cross family testimony is their failure to make any comment or raise any objection to anything that occurred at the plea proceeding or sentencing.  (That defendant himself did not object either is also telling.)  Many Cross family members were there, including the *Ginther* witnesses.  None of them said anything before, during or after.  Defendant's father explained he was reluctant to do anything that could be considered disrespectful and was under the impression that he had no right to be heard.  (*Ginther*, pp. 20-26.)  While the court appreciates his desire to avoid disrespect, if a father is truly shocked at a son's prison sentence, if that sentence was at complete variance with what the lawyer he had paid for had told him, one would think that dad would find some way to respectfully and properly inquire or object.  No one in the Cross family did anything of the sort.

The most plausible explanation for defendant's decision to accept the plea offer is not Mr. Burch's ineffectiveness.  The court finds that Mr. Burch neither lied, misled, nor gave bad advice to defendant.  The most believable explanation is that offered by Mr. Burch himself:  his client demanded a plea deal.

Defendant had made a recorded confession of a shocking, disturbing and embarrassing crime, a crime that he had apparently denied repeatedly to his family and friends.  Mr. Burch reports that defendant's confession was abrupt, convincing and powerful.  Burch testified: "The troublesome part is – and it was powerful to me

-13-

was at one point he took kind of a deep breath, like that, and he said, I have to quit lying." (*Ginther*, p. 158)  Defendant did not want the public and his family to see that confession.  Asked why he confessed, he told his lawyer: "I wanted it over[."] (*Ginther*, p. 201)  Defendant is now second-guessing his decision [to] get the case "over[,"] but hindsight provides no basis for withdrawal of his guilty plea.

> [8] Mr. Burch testified that criminal defense is a major part of his practice, that he averages two felonies a month and that he has done criminal defense work for the last 36 years.  The Cross family selected Mr. Burch, and they did so for a reason.  They did not blindly pick Mr. Burch's name out of the phone book; they were referred to him by a trusted and experienced attorney from their hometown, Peter Smith.

> [9] That the testimony of the Cross family was often contradictory does not lead the court to doubt their credibility.  In fact it shows that they were making an honest effort to tell the truth as they remembered it.  The number and nature of those inconsistencies do, however, lead the court to doubt the accuracy of their memories.

(Cir. Ct. Op. at 7-11, Page ID##304-08.)

In his brief in support of his habeas petition, Petitioner does not argue that the state court relied on the incorrect constitutional standard.  Instead, he argues that the state court made unreasonable factual findings and unreasonably concluded that counsel had been ineffective under the AEDPA standard.  Petitioner contends that the trial court effectively ignored the testimony of Petitioner and Petitioner's family about counsel's misrepresentations concerning the length of prison term faced by Petitioner if convicted of CSC I; the fact that the guidelines controlled only the minimum sentence, not the maximum sentence; and Petitioner's potential eligibility for probation, community placement, and good-time credit.  Petitioner contends that the alleged advice was constitutionally deficient and was inherently coercive, so as to undermine the voluntariness of the confession.

Contrary to Petitioner's arguments, it is apparent from the lengthy analysis contained in the opinion that the trial court fully considered the testimony provided by Petitioner's family members.  In reaching its result, the court addressed each of the major credibility issues, and its analysis is supported by the transcript of the proceeding.  (*See* Hr'g Tr., Page ID##67-270.)  As

previously discussed, a habeas court may only grant relief if the state court decision was either legally or factually unreasonable. *See* 28 U.S.C. § 2254(d). Moreover, a determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Although Petitioner apparently does not agree with the trial court's findings, he fails to overcome the presumption that those findings were correct. In addition, he fails to overcome the doubly deferential standard applied by a habeas court to a state-court's application of *Strickland*. *See Harrington*, 131 S. Ct. at 788 (citing *Knowles*, 556 U.S. at 123).

Further, although not directly addressed by the state court, Petitioner's family's representations could only bolster Petitioner's own claim not to have understood the nature of his guilty plea and likely sentences. They could not themselves demonstrate the ineffective assistance of counsel, as family members were not present for all of the conversations between Petitioner and his attorney. In fact, Petitioner's father admitted that he had met with Petitioner's attorney only a couple of times before the plea and once after the plea was entered and that Petitioner was not present at any of those meetings. (Hr'g Tr. at 15-16, Page ID##81-82.) Both Petitioner's father and his mother acknowledged that they had no knowledge of what the attorney told Petitioner during other meetings, which they knew had occurred. (*Id.* at 15-16, 44-45, Page ID##81-82, 110-11.) In addition, Petitioner's mother acknowledged that Petitioner could have understood the attorney differently than she did, which was itself different than what her husband understood. (*Id.* at 43-44, Page ID##109-10.) Both parents and Petitioner's sister testified somewhat differently about their understandings of the potential outcomes. Regardless, their evidence could not establish what Petitioner actually knew, and could not overcome the numerous reasons provided by the trial court for disbelieving Petitioner's story – his experience as a police officer, his recent professional

involvement in a sexual assault case, his educational background, the numerous references on the record to minimum and maximum sentences, and the fact that Petitioner was advised by both his attorney and his investigator who had previously served as head of probation, both of whom were very familiar with Michigan sentencing law and advised him to accept the plea agreement.  Further, trial counsel testified that he was handicapped in being able to fully advise Petitioner's family about the facts which Petitioner had revealed, both in a police statement and in his meetings with his attorney, because Petitioner did not want his parents to know the facts and did not want them to see the tape of the police interview.  (*Id.* at 157-160.)  As a result, what the family members knew or understood was substantially irrelevant to the inquiry in which the court engaged.

For all these reasons, the state-court's determination that trial counsel was not ineffective rested on an entirely reasonable finding of the facts and constituted a reasonable application of clearly established Supreme Court precedent.

### B.    Illusory Plea

Petitioner next argues that any benefit he obtained from the plea agreement was illusory, in violation of his right to due process under the Fifth and Fourteenth Amendments. Specifically, Petitioner contends that, by his attorney's own admission at the evidentiary hearing, the chances of his being convicted of CSC I were virtually nonexistent in light of supplemental statements from the complaining witness.  In addition, Petitioner argues that the promise to sentence him within a particular guidelines range was illusory because that range was identical to the one applicable under the guidelines.  In support of his argument, Petitioner refers, as he did in the state courts, to the prosecutor's remarks at the sentencing hearing and to an article that appeared in the South Bend Tribune about his entry of his plea.  (*See* App. 6 & 7 to Pet'r's Br., Page ID##273-296.)

A plea of guilty or nolo contendere must be knowingly and voluntarily made. *See Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493. The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. A plea agreement is deemed involuntary and unknowing if a defendant is unaware that the prosecution's promise is illusory. *United States v. Randolph,* 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry*, 467 U.S. at 511.

Considering all of the relevant circumstances, the trial court carefully analyzed both of Petitioner's arguments concerning the illusory nature of the plea. The court first concluded that the agreement to dismiss the CSC I charge conferred a real benefit upon Petitioner:

A defendant derives a benefit from dismissal of a charge that the prosecutor may not be able to prove at trial. Before the preliminary examination, a defendant who is offered a plea bargain but who believes the prosecution's case is weak has a choice. He may reject the deal and require the prosecutor to go forward at a preliminary examination and present evidence sufficiently robust to meet the probable-cause standard for bindover. Alternatively, he may choose to accept the offer.

The former choice entails a risk for both defendant and the prosecutor. If the prosecution's evidence at the preliminary examination turns out to be stronger than defendant thought it would be, then the prosecutor's plea offer may be withdrawn. Similarly, once the prosecutor's witnesses get on the stand under oath subject to cross-examination, their testimony could be disappointing to the prosecutor, who may then be forced to dismiss the charges. Before the witnesses testify in open court, no one really knows what they will say or how persuasive their testimony will be.

A defendant may legitimately choose to eliminate that uncertainty by taking an offer to plead to a lesser offense, even if he thinks it is unlikely that the prosecutor can prove the original charge. That is precisely what defendant did in this case. He may have believed that the victim would not offer testimony to support a CSC-1st charge at the preliminary examination, but he opted not to take the chance.

-17-

If as a matter of law a charge cannot be sustained, if the facts as alleged would not support the charge even if those facts were proven at trial, then the dismissal of the charge provides no benefit to a defendant and provides no consideration to support a plea agreement. *People v Graves*, 207 Mich App 217; 523 NW2d 876 (1994). If the prosecutor acted in bad faith in bringing the charge of CSC-1st and knew at the time of the offer what it knew at sentencing – that the victim recanted his claim that defendant digitally penetrated his anus – then defendant's claim would have merit. *People v Mrozek*, 147 Mich App 304, 309; 382 NW2d 774 (1985). But in this case defendant claims neither that the charge was barred as a matter of law nor that the prosecutor acted in bad faith in bringing the charge.

The *Mrozek* court explained the benefit defendant gets from taking a plea offer even when the original charge is weak:

A substantial benefit is gained by a defendant from the dismissal of (or forebearance in bringing of) any charges which a prosecutor, in good faith and with due regard to existing or readily discoverable evidence, believes may be possible in the case. . . . Charges may rightfully be brought against a defendant even though it might later be determined at a preliminary examination that there is insufficient evidence to justify binding a defendant over for trial. A defendant may plead guilty at any stage during the proceedings. Until it is determined that there is insufficient evidence to bind a defendant over on a given charge, there is a risk to the defendant that he may eventually be convicted of that charge. By pleading guilty pursuant to a plea bargain whereby the prosecutor agrees not to bring such a charge, the defendant avoids that risk at an early stage in the proceedings. He receives peace of mind and the absolute assurance that he will never be convicted thereon.

*People v Mrozek*, supra, at 309-10.

The plea agreement was not illusory; dismissal of the CSC-1st charge supported the agreement even if events later showed that the charge likely could not have been sustained at trial.

(Cir. Ct. Op. at 12-14, Page ID##308-10.)

As discussed earlier in this opinion, the state-court's decision is entitled to deference unless it resulted in a determination that was contrary to or an unreasonable application of law or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Moreover, a state court's determination of a factual

-18-

issue is presumed to be correct, and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);  *Lancaster*, 324 F.3d at 429.

The trial court correctly recognized that the determination of whether a plea is illusory must be based on the circumstances existing at the time the decision to plead guilty was made, not at a later time, when additional facts may have been discovered.  *Brady*, 397 U.S. at 756.  Both in the state courts and in this Court, Petitioner relied on two evidentiary sources for his argument that the dismissal of the CSC I charge was illusory: the prosecutor's statement at sentencing and a newspaper story.

At sentencing, the prosecutor stated that, "based on the statements of the victim, in speaking with him, I agree that Offense Variable 12 should be scored at zero points."  (Pet'r's Br., docket #2, Page ID#28; S. Tr. at 5, docket #2-6, Page ID#277.)  As the trial court held, the prosecutor's admission at sentencing does not demonstrate that the witness fully and unequivocally retracted his claim that Petitioner had digitally penetrated him, even a little.  It also does not demonstrate the prosecutor's knowledge at the time of the plea hearing.

Further, the newspaper article about Petitioner's plea hearing quoted the prosecutor stating that "a guilty verdict on the 1st degree offense would not have been a sure thing," because the victim had "backed off" earlier statements to the police and because "[t]he penetration . . . was slight . . . He wasn't as certain about the penetration."  (App. 7 to Pet'r's Br., docket #2-7, Page ID#295.)  The comment quoted by the newspaper does not support a conclusion that dismissal of the charge was mandatory.  It reveals only that the victim had made varying statements, and his testimony under oath may not have been sufficient to result in a conviction.  Because the witness had not yet testified under oath, dismissal of the CSC I charge conferred a benefit on Petitioner –

-19-

an elimination of the risks of the preliminary examination and trial.  The plea agreement therefore was not illusory.

Plaintiff's next argument about the illusory nature of the plea – that his agreement to a guideline range for sentencing was valueless – also was thoroughly addressed by the trial court. The trial court rejected the claim for three reasons.  First, by agreeing to accept the plea and the designated sentencing range, Petitioner avoided the risk of being convicted and sentenced to a much higher range on the CSC I charge.  Second, by taking the prosecutor's offer to stipulate to the guidelines range, Petitioner avoided the risk that the court would ultimately find a higher applicable range, and he significantly reduced the risk that the court would depart from the range.  Third, as trial counsel testified at the evidentiary hearing, a stipulated range was particularly desirable because, based on his experience, the trial judge was harsh in his sentences, and the plea would limit that harshness.  (Cir. Ct. Op. at 14-16, Page ID##311-13.)

The trial court's findings were patently reasonable.  By agreeing to plead guilty, Petitioner significantly reduced his risk of both a more serious conviction and a more substantial sentence.  All of the benefits outlined by the trial court were supported by the records of the sentencing and the evidentiary hearings.  Petitioner therefore is not entitled to relief on habeas review.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a

-20-

"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's

dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination

that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly

unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that

an issue merits review, when the Court has already determined that the action is so lacking in merit

that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat

anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v.*

*Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under

Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir.

1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant

service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing

certificate would be inconsistent with a summary dismissal).

   The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of

a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this

Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at

484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented

are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  June 19, 2014                              _____/s/ Gordon J. Quist_____
                                                              GORDON J. QUIST
                                                              UNITED STATES DISTRICT JUDGE